**UNITED STATES of America,**
**Appellee,**

v.

**Johnnie James YOUNG and Gene O'Neal,**
**Appellants.**

**No. 8879.**

United States Court of Appeals
Fourth Circuit.

Argued June 3, 1963.

Decided Sept. 10, 1963.

John P. Gardner, Darlington, S. C., for appellants.

Thomas P. Simpson, Asst. U. S. Atty. (Terrell L. Glenn, U. S. Atty., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and J. SPENCER BELL, Circuit Judges.

HAYNSWORTH, Circuit Judge.

Convicted of violations of the revenue laws relating to whisky, the defendants have appealed, contending that their preliminary motions to suppress evidence were erroneously denied. We affirm, for we find no illegal search or seizure.

Shortly after dark one evening, revenue agents stationed themselves in some

woods from whence they could observe the rear of a house owned by the defendant, O'Neal, and in which he resided. To the rear of the house and not far from the woods was a small barn or washroom. The record contains no precise measurements of the distances, but witnesses estimated that the barn was up to 120 feet from the rear of the house and up to twenty feet, or so, from the edge of the woods, where the agents had concealed themselves. There was no evidence that the woodlands were owned by O'Neal. The revenue agents, when testifying, referred to the woods as being outside the curtilage.

From their vantage point in the woods, the agents observed the comings and goings of several cars at night. They saw the defendants leave and return. They witnessed the unloading by the defendants of cardboard cartons, which they recognized as containing half-gallon fruit jars used in the illicit whisky business, their recognition being based upon the labels upon the cartons and the occasional tinkling sound of the jars striking each other as the cartons were being handled. They observed the loading of propane gas cylinders upon a truck at a point near the barn, cylinders which they knew to be frequently used to supply fuel in the operation of illicit distilleries. They heard sounds emanating from the lighted barn and smelled the odor of illicit whisky coming from it.[1]

Sometime after midnight, the agents approached the barn door, knowing that the two defendants were within. As they paused at the door of the barn, they heard the defendants discussing the number of cases they had. Thereupon, the door was opened by the defendant, Young, who was undertaking to leave, then being unaware of the presence of the agents outside. Both of the defendants were immediately arrested. At the time, within the barn and in plain view of the arresting agents, there were some 189½ gallons of illicit whisky. The agents were of the opinion that they probably were just within the open barn door when the arrests were made.

The Fourth Amendment, which protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *," forecloses a search without a warrant for evidentiary material. Whatever reason law enforcement officials may have to believe that illegal activities are being conducted within a house, they may not, without a warrant, invade the house for the purpose of searching for and seizing evidence of criminal acts.[2]

It is settled beyond question, however, that where a federal law enforcement official has probable cause to believe that a felony is being committed in his presence he may arrest the apparent felon without an arrest warrant, and, incident to the arrest, he may conduct a reasonable search.[3]

Here, the agents had probable cause to believe the defendants were committing violations of the liquor laws in their presence. They had seen the defendants unloading the glass jars and engaging in other activities in the area of the barn indicative of their occupation in the illicit whisky business. They had seen the defendants enter the barn from which there emanated the unmistakable odor of the illicit whisky which was stored within it. From what they saw, heard and smelled while concealed within the woodlands, the agents had abun-

---

1. There were cracks in the siding of the barn through which the light and the odors within escaped.

2. Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828; Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734.

3. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L. Ed. 145; United States v. Lee, 4 Cir., 308 F.2d 715.

dant cause to believe that the defendants were then engaged in packaging and handling moonshine whisky.

Under these circumstances, their entry upon the rear portion of the lot upon which O'Neal's house was located for the purpose of effecting the arrest was not unlawful.

If the agents' observations from the woods within which they were concealed be regarded as a search, it was not an unlawful invasion of O'Neal's house. In the absence of any testimony whatever that the woodlands were owned by O'Neal, there is no basis for a finding that the agents committed even a technical trespass as they observed the defendants' activities from their concealed position in the woodlands.[4] If their observation of the large quantity of whisky stored in the barn be regarded as a search, it was plainly incident to, and contemporaneous with, the valid arrests which they effected when Young threw open the door of the barn. There was no breaking of doors nor misrepresentation of the purpose of the agents. Fortuitously, the door was thrown open before they had an opportunity to knock or announce themselves.[5] Before promptly effecting the lawful arrests, they observed only what was in plain view, indeed, what they could not avoid seeing.[6]

At the trial, the defendants offered no defense. They sought only to have excluded the evidence, the suppression of which they had sought by their preliminary motion. The denial of the preliminary motion to suppress the evidence is the sole ground of the appeal. Since we conclude that the motion to suppress was properly denied and the evidence properly received, the judgments of conviction are affirmed.

Affirmed.

4. See United States v. Benson, 6 Cir., 299 F.2d 45; United States v. Sims, E.D. Tenn., 202 F.Supp. 65. Even a trespass on the grounds surrounding a building does not *per se* constitute an illegal search. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898;

Monnette v. United States, 5 Cir., 299 F.2d 847; Martin v. United States, 5 Cir., 155 F.2d 503.

5. Cf. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.

6. See Ker v. California, supra n. 5.