**UNITED STATES of America,**
**Appellee,**

v.

**Frank ROMANO, John Ottiano, Edward Romano and Antonio Vellucci,**
**Appellants.**

**No. 158, Docket 28227.**

United States Court of Appeals
Second Circuit.

Argued Jan. 6, 1964.

Decided March 25, 1964.

Motion for Rehearing and Stay of Mandate Denied April 21, 1964.

Arnold Markle, Asst. U. S. Atty., New
Haven, Conn. (Robert C. Zampano, U.

S. Atty. for Dist. of Connecticut, and Anthony G. Apicella, Asst. U. S. Atty. for Dist. of Connecticut, New Haven, Conn., on the brief), for appellee.

W. Paul Flynn, New Haven, Conn. (Frank J. Raccio, Kopkind & Flynn, New Haven, Conn., on the brief), for appellants.

Before LUMBARD, Chief Judge, and KAUFMAN and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge.

Appellants Frank Romano and John Ottiano were found guilty by the jury of violating 26 U.S.C. § 5601(a) (1), possession of a distilling apparatus not registered as required by 26 U.S.C. § 5179(a). With appellants Edward Romano and Antonio Vellucci, they were also found guilty of violating § 5601(a) (8), producing distilled spirits when not being authorized to do so by the law, and of conspiring to violate § 5601(a) (8), 18 U.S.C. § 371. Of all the issues raised by the defendants-appellants as supporting a reversal of their convictions we find merit in only one—the invalidity of the statutory presumptions of 26 U.S.C. §§ 5601(b) (1) and (4) which were invoked as to two appellants on counts 1 and 2. We therefore affirm the judgment of conviction of all the appellants on the conspiracy charge, count 3, and the conviction of Edward Romano and Antonio Vellucci on count 2 for the unlawful production of distilled spirits. We reverse the convictions of Frank Romano and John Ottiano on counts 1 and 2.

The events leading to the issue of a search warrant and its subsequent execution are undisputed. On October 10, 1960, between 10:30 and 11:00 P.M., Agents Nadel and Sushman of the Alcohol and Tobacco Tax Division of the Internal Revenue Service, together with a State Police Officer, went to the site of the "Aspinook Mill" in Jewett City, Connecticut. "Aspinook Mill," owned by the Griswold Corporation, was a large complex of industrial buildings covering 42 acres of land. The agents had information that there was an illegal distilling apparatus located in the extreme northwest corner of the industrial complex. After gaining entrance through a hole in the fence, the agents proceeded through a series of buildings belonging to the Griswold Corporation which were not leased or occupied. They reached a position in an alleyway from where they detected the distinct odor of fermenting mash coming from the building known as building 9A, located in the northwest corner of the complex. They then left via their route of entry. That same evening between 7:00 P.M. and 10:00 P.M. another agent, Shaw, was located on high ground across the river bordering the industrial complex. Using binoculars, he observed the interior of building 9A where he saw a column still and other items used in the distilling of liquor. Agents Shaw and Sushman then applied to Chief Judge Anderson for a warrant to search building 9A on the basis of their affidavits in which they set forth their observations made on the evening of October 10, and the fact that no registration certificate had been issued by the Treasury Department permitting the distilling of spirits on those premises. Chief Judge Anderson issued the warrant to Shaw and Sushman on October 11.

At 7:30 A.M. on October 13, Shaw, with Federal Agents Norton and Nadel and Connecticut State Police Officers Marikle and Hart, after demanding entry and receiving no answer, forced the front door to building 9A. On the other side of the door was a 753-gallon capacity still and 9 mash vats which contained approximately 5756 gallons of mash. Appellants Frank Romano and John Ottiano were standing several feet from the still. In addition, they found a few hundred Knox glass jugs, 40 sixty-pound bags of Domino sugar and a plywood partition together with other equipment listed in the return. In Ottiano's pocket the agents found the keys to the doors of the building and the lock on the front gate to the mill property. Frank Romano told the agents that he did not know how long the still had been in op-

eration and that he had been there four days. He showed the agents how to turn off the motor.

As to Antonio Vellucci and Edward Romano, there was testimony that these two shopped together for and purchased a 1960 Ford truck in Vellucci's name about a month before the seizure of the still. There was testimony that this Ford truck was used on several occasions to pick up both Knox jugs and sixty-pound bags of Domino sugar, and Edward Romano and Frank Romano were identified as the drivers of the Ford truck on these occasions. On October 2 the watchman for the industrial complex observed the truck at the still site carrying bags of Domino sugar. When Edward Romano saw the watchman observing the truck, he covered the sugar with canvas. The watchman also saw Edward Romano and John Ottiano at the still site carrying the partition and the toilet that were found in building 9A at the time of the raid.

■ Vellucci was often seen in the company of Edward Romano during the few weeks preceding the raid. When questioned by an agent at his home shortly after the seizure, Vellucci asserted that his health had been such as to prevent his operating the truck, and that he had left the truck with the keys in the ashtray a few days before the truck was used by the Romanos. The hospital records which Vellucci claimed would substantiate his disability did not in fact do so. The evidence is sufficient to sustain convictions on all counts.

■ The appellants' first claim of error is that the execution of the search warrant violated the Fourth Amendment. They assert that the information supporting the issuance of the search warrant was obtained as a result of a trespass and that this trespass invalidates the warrant and the evidence gained as a result of its use. We disagree. The appellants have no standing to complain of any trespass. They were not the owners or possessors of the area of land over which the agents traversed in order to gain a position from which they could smell the aroma of fermenting mash coming from building 9A. In any event, it is well settled that evidence is not rendered inadmissible merely because it has been obtained in the course of a simple trespass on land. The protection accorded by the Fourth Amendment to the people in their "persons, houses, papers, and effects," does not extend to open fields, or to unoccupied buildings. Hester v. United States, 265 U.S. 57, 44 S. Ct. 445, 68 L.Ed. 898. Moreover, the affidavit of Agent Shaw, who, from without the building and land area in question, observed the operation of the still with the aid of binoculars, and the statement in Shaw's affidavit that no still was licensed for these premises constituted sufficient probable cause to justify the issuance of the search warrant by Chief Judge Anderson.

■ After the execution of the warrant the agents dismantled the still and destroyed some of the property that was there found. The appellants argue that as the government destroyed some of the evidence seized they could not determine whether some of the items destroyed could have served some useful purpose in the defense of the charges. The appellants have failed to show that they suffered any prejudice by reason of the destruction. The essential elements of the still were not destroyed and were available for inspection. Photographs and movies were made prior to dismantling and these were also available to the defendants. The magnitude of this distilling operation made it impracticable to remove the apparatus intact. The destruction of illegal stills and their appurtenances is authorized by 26 U.S.C.A. § 5609 in those cases where "it is impracticable to remove the still and distilling material to a place of safe storage from the place where seized." The distinct hazard of fire as well as the caretaking difficulties involved are further reasons which justify the destruction of such a still under the statute, and in this particular case.

■ The claim that the defense, during trial, was improperly denied access to the entire written report of Agent Nadel is without any basis. Nadel's statements were made available when he testified. The only parts of his report not made available then were reports from other agents which he had incorporated in his report. Such reports of other witnesses were made available when those witnesses were called to testify. The defense was given everything to which it was entitled, at the proper time; if the reports of other agents, which Nadel had neither approved nor disapproved, would have been helpful in questioning Nadel, the defense might have asked that he be recalled. This they failed to do.

■ We come to the one meritorious claim by the appellants. This related to Judge Clarie's instruction to the jury as to counts 1 and 2, informing them of the presumptions in 26 U.S.C. §§ 5601 (b) (1) and (4). With regard to count 1, charging unlawful possession of a distilling apparatus, Judge Clarie read § 5601(b) (1) as follows:

"(b) Presumptions.—

"(1) Unregistered stills.—Whenever on trial for violation of subsection (a) (1) the defendant is shown to have been at the site or place where, and at the time when, a still or distilling apparatus was set up without having been registered, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury."

Judge Clarie also advised the jury with regard to count 2, which charged the defendants with producing distilled spirits without being authorized by law to do so, that the similar presumption set out in § 5601(b) (4) may be applied,[1] where a defendant is shown to have been at the still site. These presumptions of course could apply only to the defendants Frank Romano and John Ottiano who were found present at the still site where spirits were being illegally produced. Although these presumptions do not require the jury to conclude from the unexplained presence of the defendant at the still site that the defendant is in possession and control of the still, the result is, nonetheless, that with no other evidence against the defendant the jury may find the defendant guilty as charged.

We are of the view that to apply these presumptions to persons shown to have been at the still would violate the due process clause of the Fifth Amendment. Barrett v. United States, 322 F.2d 292 (5 Cir. 1963), certiorari granted 375 U. S. 962, 84 S.Ct. 489, 11 L.Ed.2d 413 (1964). Proof of the fact on which the statutory presumption is based, namely presence, must carry a reasonable inference of the ultimate fact presumed, namely that the person is in possession of the still or is distilling spirits. The inference here is too strained and is not reasonably related to the fact proved. For example, one found present at a still may as well be a purchaser of the distilled product or a visitor for some other business purpose.

The presumptions here involved are totally unlike the one created when unexplained possession of narcotic drugs is shown.[2] For the "legitimate possession

1. Title 26, § 5601(b) (4) provides in part:
"(4) Whenever on trial for violation of subsection (a) (8) [that is, producing, distilled spirits], the defendant is shown to have been at the site or place where, and at the time when, such distilled spirits were produced by distillation or any other process from mash, wort, wash, or other material, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury."

2. 21 U.S.C. § 173 provides in part:
"It is unlawful to import or bring any narcotic drug into the United States or any territory under its control or jurisdiction; except that such amounts of crude opium and coca leaves as the Commissioner of Narcotics finds to be necessary to provide for medical and legitimate

[of opium] * * * is so highly improbable that to say to any person who obtains the outlawed commodity, 'since you are bound to know that it cannot be brought into this country at all, except under regulation for medicinal use, you must at your peril ascertain and be prepared to show the facts and circumstances which rebut, or tend to rebut, the natural inference of unlawful operation, or your knowledge of it,' is not such an unreasonable requirement as to cause it to fall outside the constitutional power of Congress." Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L. Ed. 904 (1925).[3] We find that the presumptions set out in §§ 5601(b) (1) and (4) fall outside the constitutional power of Congress. There is no broad ground of experience which supports the conclusion that people present at a still site are in possession or control of the distilling operation on that site in such a large proportion of such instances that a jury may be instructed that it may draw such a conclusion in the absence of any explanation.

■ While the evidence against Frank Romano and John Ottiano, apart from the presumptions, was ample, we cannot speculate as to what weight the jury might have given to the presumptions in reaching its finding of guilt on these two counts. Therefore the convictions of these two defendants under counts 1 and 2 must be reversed. As Judge Clarie made it clear that the presumptions were limited to those present and to counts 1 and 2 only, and as proof of the conspiracy was more than sufficient to sustain the verdict on count 3, we affirm the convictions on count 3 and we affirm the convictions of Edward Romano and John Vellucci under count 2.

On Appellee's Motion for Rehearing, Appellants' Motion for Rehearing and Stay of Mandate in the Event Rehearing Is Denied

PER CURIAM:

The petition of the appellants and the petition of the appellee are both denied.

■ The appellants' claim that they were prejudiced by the alleged failure of the government to have a stenographer make notes of all the testimony before the grand jury is disposed of not only by Costello v. United States, 255 F.2d 389 (8 Cir.), cert. denied, Cannella v. United States, 358 U.S. 830, 79 S.Ct. 51, 3 L.Ed.2d 69 (1958), which holds that the district court need not inquire into the sufficiency of evidence before the grand jury, but also by the fact that the appellants' counsel has been unable to demonstrate in his original brief and at the argument before this court that there could have been any possible prejudice to the appellants by reason of incomplete transcription of grand jury testimony.

There was no showing and there is no reason to believe that appellants were at any time denied full disclosure of any

___

uses only may be imported and brought into the United States or such territory under such regulations as the Commissioner of Narcotics shall prescribe, * * *."

21 U.S.C. § 174 penalizes:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, * * *." and then provides:

"Whenever on trial for violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

3. But where there is proof that a particular kind of narcotic drug is domestically produced in quantity, the presumption of knowledge of illegal importation has been found without rational foundation, and hence unconstitutional. Erwing v. United States, 323 F.2d 674 (9 Cir. 1963), see also United States v. Gibson, 310 F.2d 79 (2 Cir. 1962).

grand jury testimony which was transcribed and which contained any statements inconsistent with the trial testimony of any witness. Such grand jury testimony as was available and reflected any possible inconsistencies was in fact turned over to defense counsel.

The other points which the appellants wish us to reconsider are entirely without merit.

The appellants' motion for a stay of the mandate pending application to the Supreme Court for a writ of certiorari is denied.