**UNITED STATES of America**

**v.**

**John E. STONE et al.**

**Crim. A. No. 3–63–186.**

United States District Court
N. D. Texas,
Dallas Division.

Aug. 10, 1964.

---

Barefoot Sanders, U. S. Dist. Atty., Dallas, Tex., and Donald Stone, Sp. Atty., U. S. Dept. of Justice, Washington, D. C., for the United States.

Charles W. Tessmer and Emmett Colvin, Jr., Dallas, Tex., for defendants.

HUGHES, District Judge.

One of the defendants John E. Stone was indicted in several counts with violation of Section 1084, Title 18 United States Code. It was charged that John E. Stone being engaged in the business of betting and wagering, knowingly used a wire communication facility, towit, a public telephone in the City of Dallas, Texas, for the transmission in interstate commerce between Las Vegas, Nevada and Dallas, Texas, of information assisting in the placing of bets and wagers on sporting events and contests, such information consisting of betting odds on baseball games.

Before trial a motion was made by the defendant to suppress all transcriptions, records, notes or evidence of telephone conversations overheard through an electronic device placed within a public telephone booth in the City and County of Dallas, Texas.

The evidence on the hearing of the motion revealed that an electronic device consisting of a wireless transmitter had been placed underneath the base of the telephone in a public telephone booth located on a street in Dallas. It was not physically connected with the telephone. The defendant, without any knowledge of the presence of the device, entered the booth, closed the door, put a coin in the coin slot of the telephone, placed a call to Las Vegas, Nevada and talked to someone in Las Vegas. The electronic device transmitted his part of the conversation, without the aid of a telephone wire, to an electric receiver in an automobile several hundred feet away where a recording was made. The part of the conversation of the person to whom defendant was talking could not be picked up by the device.

The question involved is whether the overhearing of defendant's conversation in a public telephone booth through the use of an electronic device placed therein by government agents without the knowledge of the defendant constituted a search and seizure in violation of defendant's constitutional rights under the Fourth and Fifth Amendment of the United States Constitution.

The first issue to be determined is whether a public telephone booth being used by an individual citizen for a private toll call is a protected area under the Fourth Amendment where constitutional immunity from search or seizure of his person or effects can be claimed.

In the case of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960) petitioner was in an apartment of a friend, who had permitted him to use it, when it was searched by federal officers with a search warrant. Petitioner moved to suppress the evidence secured in the apartment on the ground that the warrant had been issued without probable cause. The district judge denied petitioner's motion solely on the basis of petitioner's lack of standing to make it. With respect to this contention the Supreme Court recognized "that anyone legitimately on premises when a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him" and held that petitioner "was entitled to have the merits

of his motion to suppress adjudicated," thereby overruling earlier cases holding that guests did not have standing to raise the question of the legality of a search of premises in which they were present.

The protection of the Fourth Amendment has been held by the Supreme Court to include a business office (Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647), a store (Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453), a hotel room (United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59), an automobile (Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134), and an occupied taxicab (Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688).

It seems clear that a person using a public telephone in an enclosed booth and having placed the money in the coin box has the same right to its use as a customer in a taxi or a guest in an apartment. His right is exclusive and he is entitled to complain of the use of evidence obtained during his occupancy.

■ The second issue to be determined is whether overhearing a conversation by means of an electronic device without the knowledge of the defendant constituted a search and seizure in violation of defendant's constitutional rights.

Neither the Supreme Court nor any Circuit Court has directly passed upon this question. There are, however, a number of cases which discuss the question of the extent to which an individual is protected by the Fourth Amendment.

In Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376 (1928) telephone wires were tapped in the basement of an office building and in the street outside defendant's home. The Supreme Court in holding there was no violation of the Fourth Amendment in the use of evidence so obtained said at page 464 of 277 U.S., at page 568 of 48 S.Ct.:

"The amendment does not forbid what was done here. There was no searching. There was no seizure. The evidence was secured by the use of the sense of hearing and that only. There was no entry of the houses or offices of the defendants."

In the case of Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942) evidence had been obtained by federal agents by the use of a detectaphone applied to the wall of a room adjoining the office of defendant. The Supreme Court held that there being no trespass or unlawful entry in connection with the use of a detectaphone its use was not a violation of the Fourth Amendment.

In On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952) a federal under-cover agent entered the customer's room of defendant's laundry with the consent of defendant and engaged defendant in conversation. A radio transmitter concealed on his person transmitted his conversation with defendant to another federal agent on the sidewalk, having a radio receiver. The Supreme Court held that no trespass having been committed there was no violation of the Fourth Amendment.

In each of these three cases the Court took pains to point out that in obtaining evidence of conversations of defendant there had been no unauthorized physical encroachment within a constitutionally protected area.

With the case of Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) the Supreme Court moved from the trespass doctrine as a prerequisite to a determination of the constitutionality of the search and seizure involved, holding that actual physical invasion of a defendant's premises was not a vital factor in determining a violation of the Fourth Amendment.

In the Silverman case an electronic listening device was pushed through the party wall of an adjoining house until it touched the heating ducts in the house occupied by defendants. Conversations heard by officers by means of the device were admitted in evidence over objection of defendants. With respect to the ad-

mission of this evidence the Supreme Court had this to say at page 511 of 365 U.S., at page 682 of 81 S.Ct.:

"the officers overheard the petitioners' conversations only by usurping part of petitioners' house or office— a heating system which was an integral part of the premises occupied by the petitioners, a usurpation that was effected without their knowledge and without their consent. In these circumstances we need not pause to consider whether or not there was a technical trespass under the local property law relating to party walls. Inherent Fourth Amendment rights are not inevitably measurable in terms of ancient niceties of tort or real property law. * * *

"The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. * * *

"But decision here does not turn upon the technicality of a trespass upon a party wall as a matter of local law. It is based upon the reality of an actual intrusion into a constitutionally protected area. What the Court said long ago bears repeating now: 'It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure.' Boyd v. United States, 116 U.S. 616, 635 [626–630, 6 S.Ct. 524, 535, 29 L.Ed. 746]. We find no occasion to re-examine Goldman here, but we decline to go beyond it, even by a fraction of an inch."

In the recent case of Lopez v. United States, 373 U.S. 427, at 466, 83 S.Ct. 1381 at 1402, 10 L.Ed.2d 462 (1963) Justice Brennan in a dissenting opinion arguing for the reversal of the doctrine of On Lee v. United States, supra, had this to say:

"Electronic aids add a wholly new dimension to eavesdropping. They make it more penetrating, more indiscriminate, more truly obnoxious to a free society. Electronic surveillance, in fact, makes the police omniscient; and police omniscience is one of the most effective tools of tyranny.

"The foregoing analysis discloses no adequate justification for excepting electronic searches and seizures from the requirements of the Fourth Amendment. But to state the case thus is to state it too negatively. It is to ignore the positive reasons for bringing electronic surveillance under judicial regulation. Not only has the problem grown enormously in recent years, see, e. g., Todisco v. United States, 9 Cir., 298 F.2d 208; United States v. Kabot, 2 Cir., 295 F.2d 848, but its true dimensions have only recently become apparent from empirical studies not available when Olmstead, Goldman and On Lee were decided."

Going back to the founding of this country it is clear that individual privacy was one of the strongest single influences that guided the founders of this country in the establishment of a new nation and the adoption of the Bill of Rights.

Privacy of a protected area was invaded only by an actual physical intrusion. But today electronic devices without physical presence enables an intrusion upon the air, light and sound waves of a person's property as real as any physical trespass.

But fundamental rights protected by the Bill of Rights cannot become outdated by technological developments. Sustaining this position the Supreme Court stated in Village of Euclid v. Ambler Realty Company, 272 U.S. 365, at page 387, 47 S.Ct. 114, at page 118, 71 L.Ed. 303 (1926):

"while the meaning of the constitutional guaranties never varies, the

scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world it is impossible that it should be otherwise."

In the light of technological improvements it is clear that an electronic device placed in a protected area by government agents without the knowledge of the defendant and transmitting a telephone conversation of defendant is as much a physical trespass and violation of the right to privacy as is the making of an unlawful physical entry, and overhearing the conversation under such circumstances is a violation of the Fourth Amendment.

With respect to whether the admission of evidence secured through an electronic device also violates the Fifth Amendment Judge Washington in a dissenting opinion in Silverman, 275 F.2d 179 reasoned that:

> "eavesdropping of the kind which occurred here * * * does violate * * * our fundamental concept of ordered liberty, as embodied in the due process clauses of the Fifth and Fourteenth Amendments." [Silverman v. United States, 107 U.S.App.D.C. 144, 275 F.2d 173.]

In the recent case of Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, Justice Brennan approved the following statements in Boyd v. United States, supra, that

> "Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony * * * to be used as evidence to convict him of crime, or to forfeit his goods, is within the condemnation of [the Fourth and Fifth Amendments]."

and in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 that

> "We find that as to the Federal Government the Fourth and Fifth

Amendments * * * do enjoy an 'intimate relation' in their perpetuation of 'principles of humanity and civil liberty [secured] * * * only after years of struggle'. Bram v. United States, 1897, 168 U.S. 532, 543–544 [18 S.Ct. 183, 187, 42 L. Ed. 568]."

It is clear that the use of defendant's conversation in a criminal case under the circumstances in this case is within the condemnation of the Fifth as well as the Fourth Amendment.

Motion to suppress the evidence obtained by overhearing defendant's conversation in a public telephone booth through the use of an electronic device placed there by government agents without defendant's knowledge should therefore be sustained.