STATE of Tennessee, Appellant,

v.

Donald Edward WERT, Appellee.

Court of Criminal Appeals of Tennessee.

Jan. 6, 1977.

Certiorari Denied by Supreme Court
March 14, 1977.

R. A. Ashley, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, John W. Gill, Jr., Asst. Dist. Atty. Gen., Knoxville, for appellant.

W. Zane Daniel, Knoxville, for appellee.

## OPINION

WALKER, Presiding Judge.

We granted the state's petition for certiorari to determine whether or not the trial judge abused his discretion in suppressing the evidence obtained by a search of the appellee's premises without a warrant. We hold that he did not and dismiss the petition for certiorari.

The appellee, Donald Edward Wert, was in possession of and living on a 50-acre farm in Knox County which was enclosed by a fence with the exception of about 400 feet on the eastern side along Clapps Chapel Road. That area of the farm is bounded by woods and to its west is a creek. In addition to the house, on the farm there were a barn, garden plot, tobacco field, corn field, hay field and other wooded areas. Nearby, but not on the premises, there were four houses and a church along Clapps Chapel Road.

The evidence was in dispute as to whether or not on the date of the entry there were four or five no-trespassing signs on the eastern side of the unfenced wooded area facing the road. Exhibits in the record show these signs which the appellee contends were there at the time of the search. The appellant's witnesses say they did not see any signs when they entered. The trial judge did not think this determinative and did not make a finding on this disputed evidence.

On June 3, 1975, acting on information supplied by two informers, Knoxville police officers Richard Houser and Steve Sherrod went on the appellee's farm to determine whether or not marijuana was being cultivated there. Entering the farm from the wooded area near Clapps Chapel Road, they found a marijuana patch. It was not visible from the road but could be seen only after entering the premises. Officers made another search June 9 by climbing the fence and found another marijuana patch. They searched again June 14 and arrested the appellee on his farm June 21 at which time they found some marijuana in a plastic bag on the well house about 15 feet from his home. After arresting him they then obtained a search warrant for his house and confiscated 32 pounds of green plant material, hand scales, hose and some fertilizer.

■ Obviously the legality of the initial search by Houser and Sherrod on June 3 determines the issue before us. If it was illegal, the subsequent searches were likewise illegal under the "fruit of the poisonous tree" doctrine. *Silverthorne Lumber Company v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

■ Both sides agree that the ban against unreasonable searches and seizures in the Tennessee Constitution, Article I, Section 7, is broader than that of the United States Constitution, Amendment IV, because it covers "possessions" while the federal provision covers only "effects." We are unable to accept this conclusion.

In *Sneed v. State*, 221 Tenn. 6, 423 S.W.2d 857 (1967), our Supreme Court said that the federal and state provisions against unreasonable searches and seizures are identical in intent and purpose and the court would not construe the Tennessee article more favorably to the accused than its federal counterpart. It also said we should regard federal cases as particularly persuasive on search and seizure issues. See also *Anthony v. Carter*, Tenn., 541 S.W.2d 157 (1976).

The distinction between "possessions" and "effects" does not control the question before us. The United States Supreme Court has rejected the premise that distinctions based upon property interests control the right of the state or government to search and seize under the Fourth Amendment. *Jones v. United States*, 362 U.S. 257, 266, 80 S.Ct. 725, 4 L.Ed.2d 697, 705 (1960); *Warden v. Hayden*, 387 U.S. 294, 304, 87 S.Ct. 1642, 18 L.Ed.2d 782, 790 (1967); *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967); *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

In *Katz v. United States*, the court said:

"(T)he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

.    .    .    .    .

"(F)ourth Amendment protects people—and not simply 'areas'—against unreasonable searches and seizures, it becomes clear that the reach of that Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure."

The state argues that the marijuana patch was found in the open fields of the farm, an area unprotected by the Fourth Amendment. *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); but *Katz* has modified *Hester* by injecting the privacy concept to the open-fields doctrine. See *Katz*, supra, footnote 9; *Air Pollution Variance Board v. Western Alfalfa Corporation*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974), which specifically referred to respondent's privacy interest, although finding none in that case, because inter alia, he took no steps to designate his property as private by excluding the public therefrom; and *United States v. Santana*, supra, which applied both *Katz* and *Hester* to the situation where the defendant was in the doorway of her home and was visible to policemen in the street.

■ In holding that the search violated the Tennessee Constitution, the trial judge relied heavily on *Welch v. State*, 154 Tenn. 60, 289 S.W.2d 510 (1926), protecting one's "possessions" in actual occupancy from unreasonable searches and seizures. By its argument, the appellant contends this case was wrongly decided and, in light of new authority, we should hold that the word "possessions" has a common meaning with the word "effects." Such a holding will not help the appellant because we find that the search violated both the Federal and the State Constitutions.

In *United States ex rel. Gedko v. Heer*, 406 F.Supp. 609 (W.D.Wis.1975), officers climbed a fence and entered Gedko's wooded and hilly 160-acre farm in a rural area without a search warrant and observed his activities in growing and harvesting marijuana and listened to his conversation when a government airplane flew low over his farm. The government relied on the open-fields exception of *Hester v. United States*, insisting that the government could intrude on the property so long as its officers remained outside the curtilage. The district court rejected that argument, holding that Gedko, who enclosed his property with a fence and hence designated his farm as private, had a reasonable expectation of privacy protected by the Fourth Amendment to the federal constitution that was violated when the police observed his activities from within the farm's boundaries without a warrant. Wert had a similar expectation of privacy here which was similarly violated by the police.

The intrusion of the officers on Wert's land without a search warrant was unlawful and the trial judge properly sustained the motion to suppress the evidence obtained by it. He did not abuse his discretion but, on the contrary, correctly suppressed the evidence.

The petition for certiorari is dismissed.

DUNCAN, J., concurs.

TATUM, Judge, dissenting.

I must respectfully dissent. I agree with the majority that there is no distinction to be made between the United States Constitution and the Tennessee Constitution with regard to their respective provisions against unreasonable searches and seizures.

I do not agree that *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) [hereinafter cited as *Katz*], has modified *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) [hereinafter cited as *Hester*]. *Hester* is a landmark holding of the United States Supreme Court which distinguishes the protection afforded in the curtilage and the open fields. It holds that the Fourth Amendment protection against unreasonable searches and seizures is not applicable to the "open fields". The bench and bar have come to refer to the *Hester* rule as the "open fields doctrine".

I can find nothing in *Katz* which indicates an intention by the United States Supreme Court to tamper with the open fields doctrine. In that case, FBI agents had monitored the defendant's telephone conversation held in a public telephone booth by use of sophisticated electronic sound equipment. The Supreme Court held that this violated Katz's Fourth Amendment rights in that he had a right to expect privacy while he was occupying the telephone booth, even though the telephone booth was accessible to the public. In this context, the Supreme Court observed that the "Fourth Amendment protects people, not places". In *Katz*, the Supreme Court was not dealing with the open fields doctrine. The only mention of the doctrine is in Footnote 8 and the implication there is, if any, that the open fields doctrine is still alive and well:

"In support of their respective claims, the parties have compiled competing lists of 'protected areas' for our consideration. It appears to be common ground that a private home is such an area, *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, *but that an open field is not. Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898. Defending the inclusion of a telephone booth in his list

the petitioner cites *United States v. Stone*, D.C., 232 F.Supp. 396, and *United States v. Madison*, 32 L.W. 2243 (D.C.Ct. Gen.Sess.). Urging that the telephone booth should be excluded, the Government finds support in *United States v. Borgese*, D.C., 235 F.Supp. 286." 389 U.S. 347, at 351, 88 S.Ct. at 511. (Emphasis supplied)

I have read the other United States Supreme Court cases cited by the majority in support of their holding. In none of these cases does the question presented in *Hester* or any issue involving the open fields doctrine come before the Court. There is no dictum in these cases which is indicative of disapproval of *Hester* on the part of the United States Supreme Court.

It is true that the United States District Court for the Western District of Wisconsin in *United States ex rel. Gedko v. Heer*, 406 F.Supp. 609 (W.D.Wis. 1975), found that a 160-acre farm upon which a crop of marijuana was growing was protected under the Fourth Amendment. I would not follow the precedent of the District Court in Wisconsin, but instead would follow the overwhelming number of cases decided by the various United States Circuit Courts of Appeal since the *Katz* opinion. None of these Circuit Courts make the assault upon *Hester* as was done by the Wisconsin District Court and by my colleagues, the majority. In *United States v. Capps*, 435 F.2d 637, 640 (9th Cir. 1970), the Ninth Circuit Court of Appeals held as follows:

"Appellee contends that even the entry upon the Elkins' premises was improper because the officers did not have a warrant for the Oldsmobile and lacked probable cause to believe that the Pontiac was located on the property. This contention is without merit. Even assuming that the law enforcement officers were both trespassing and lacking in probable cause when they turned off the public road onto Elkins' private driveway, it is a concession of no benefit to appellee. The Fourth Amendment's protections do not extend to the 'open field' area surrounding a dwelling and the immediately adja-

cent curtilage, and therefore, information gained as a result of a civil trespass on an 'open field' area is not constitutionally tainted, nor is the search and seizure which ultimately results from acquiring that information. *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *Wattenburg v. United States*, 388 F.2d 853, 856 (9th Cir. 1968); *McDowell v. United States*, 383 F.2d 599, 603 (8th Cir. 1967); *Giacona v. United States*, 257 F.2d 450, 456 (5th Cir.), cert. denied, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958); *Koth v. United States*, 16 F.2d 59, 61 (9th Cir. 1926). Consequently, the fact that the agents first learned after they entered upon Elkins' premises, that the Pontiac was located thereon, was not information improperly obtained."

In *Patler v. Slayton*, 503 F.2d 472, 478 (4th Cir. 1974), the Fourth Circuit Court of Appeals held:

". . . The maxim of *Katz* that the fourth amendment protects 'people not places' is of only limited usefulness, for in considering what people can reasonably expect to maintain as private we must inevitably speak in terms of places. Speaking in such terms, we said under similar circumstances in *United States v. Brown*, 487 F.2d 208, 210 (4th Cir. 1973), cert. denied, 416 U.S. 909, 94 S.Ct. 1617, 40 L.Ed.2d 114 (1974):

Appellants' reasonable expectations of privacy—while extending to their dwellings and the immediate area around them and even to the area occupied by outbuildings such as the barns in question . . .—cannot, in light of *Hester*, be said to include the 'open fields' around the barn.

*See also United States v. Minton*, 488 F.2d 37, 38 (4th Cir. 1973). *Even if Patler could be said to have exhibited an actual expectation of privacy in the area searched, we cannot say that such an expectation is one that society is prepared to recognize as 'reasonable.'* Katz, supra, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring)." (Emphasis supplied).

In *Atwell v. United States*, 414 F.2d 136, 139 (5th Cir. 1969), the Fifth Circuit Court of Appeals held:

"The record shows that the still in question was located approximately 250 yards from the back of a house in the open land beyond the curtilage of the house. Appellants argue that the Government should have proved that there was not an unlawful search or seizure before being allowed to introduce any testimony regarding what the officers saw at the still site. But inasmuch as the protection of the Fourth Amendment against unreasonable searches and seizures does not extend to 'open fields,' there was no unreasonable search. *See, e.g., Hester v. United States*, 1924, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; *Monnette v. United States*, 5th Cir. 1962, 299 F.2d 847. Moreover, even if the officers were trespassing on private property, a trespass does not of itself constitute an illegal search. *Monnette v. United States, supra* ; *United States v. Young*, 4th Cir. 1963, 322 F.2d 443. Accordingly, it was not error for the trial court to admit testimony regarding what the officers saw at the still."

In *United States v. Watt*, 309 F.Supp. 329, 330 (N.D.Cal. 1970), the District Court for the Northern District of California cited *Katz* in support of the principle upon which the open fields doctrine is based:

"Apart from *Chimel*, all prior law upholds just that type of search conducted here under the 'open field' doctrine. That doctrine was first announced in *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 447, 68 L.Ed. 898 (1924):

As to that, it is enough to say that, apart from the justification, the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law. Numerous cases have followed this principle since. E.g., *United States v. Campbell*, 395 F.2d 848, 848–849 (4th Cir. 1968);

*McDowell v. United States*, 383 F.2d 599, 603 (8th Cir. 1967); *United States v. Hassell*, 336 F.2d 684 (6th Cir. 1964); *United States v. Romano*, 330 F.2d 566, 569 (2d Cir. 1964), aff'd 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); *Edwards v. United States*, 206 F.2d 855, 856 (10th Cir. 1953); *Janney v. United States*, 206 F.2d 601, 604 (4th Cir. 1953); *Koth v. United States*, 16 F.2d 59, 61 (9th Cir. 1926). *See also Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 n. 8 (1967); [Emphasis supplied] 47 Am.Jur. § 17, at 513; 79 C.J.S. Searches and Seizures § 14, at 791.

This is true whether the land is enclosed or unenclosed, *Martin v. United States*, 155 F.2d 503, 505 (5th Cir. 1946), and whether or not the land surrounds the house (as long as the land is not so intimate to the house as to be the curtilage). *United States v. Feldman*, 104 F.2d 255, 256 (3d Cir. 1939). See generally 19 A.L.R.3d 727."

Also see *United States v. Brown*, 487 F.2d 208 (4th Cir. 1973); *United States v. Hollon*, 420 F.2d 302 (5th Cir. 1969).

I would follow the reasoning of the California Court in *Dean v. Superior Court for County of Nevada*, 35 Cal.App.3d 112, 110 Cal.Rptr. 585 (1973):

"A generalized expression of Fourth Amendment doctrine usually excludes 'open fields' from the scope of constitutional protection. (*Hester v. United States*, 265 U.S. 57, 58–59, 44 S.Ct. 445, 68 L.Ed. 898; *People v. Dumas, supra*, 9 Cal.3d at [871] p. 882, fn. 10, 109 Cal.Rptr. 304, 512 P.2d 1208) Consistently with *Katz v. United States*, supra, the courts recognize that a test phrased in terms of 'constitutionally protected areas' often falls short; that a more fundamental test is whether the person has exhibited a reasonable expectation of privacy covering the area of the search or seizure. [citations omitted]. The immediate question, then, is whether the marijuana field lay within the owner's reasonable expectations of privacy.

Had petitioner's crop been wheat or oats, the open fields rule would have supplied a sufficient answer, for agriculturists do not expect their wheat or oat fields' concealment from aerial view. Petitioner, on the other hand, claims that reasonable expectations of privacy blanketed his field of *cannabis sativa*. Was not the crop contraband? Did not its cultivation and possession expose the owner to prison? What more was needed to stimulate his strenuous insistence on privacy?

Petitioner erroneously gives identity to two unlike notions—an internal, uncommunicated need for privacy and a reasonable, exhibited expectation of privacy. Only the latter qualifies as a Fourth Amendment determinant. 'The courts have implicitly recognized that man requires some sanctuary in which his freedom to escape the intrusions of society is all but absolute . . . Certain other places carry with them an expectation of privacy which, although considerable is less intense and insistent. . . . This hierarchy of protection arises not from the application of differing constitutional standards to various locales, but rather from an application of a single standard of reasonableness to all places in accordance with a fundamental understanding that a particular intrusion into one domain of human existence seriously threatens personal security, while the same intrusion into another domain does not.' (*People v. Dumas*, 9 Cal.3d at pp. 882–883, 109 Cal.Rptr. at 311, 512 P.2d at 1215.)

Judicial statements like the foregoing disclose that mankind's common habits in the use of domestic and business property supply a prime measure of the reasonableness of expectations of privacy. [citations omitted]. One who builds a swimming pool and sunbathing area in his backyard expects privacy (hence immunity) from aerial inspection. Areas reasonably used in ordinary business operations are assumedly entitled to similar immunity. Such areas are expectedly private according to the common habits of mankind. So was the area exposed to heli-copter surveillance in *People v. Sneed*, supra; to the *Sneed* court, the area was the occupant's 'backyard.' (32 Cal.App. 3d at [535] p. 542, 108 Cal.Rptr. 146.)

When the police have a plain view of contraband from a portion of the premises as to which the occupant has exhibited no reasonable expectation of privacy, there is no search in a constitutional sense; the evidence so displayed is admissible. [citations omitted]. One who establishes a three-quarter-acre tract of cultivation surrounded by forests exhibits no reasonable expectation of immunity from over-flight. The contraband character of his crop doubtless arouses an internal, uncommunicated need for secrecy; the need is not exhibited, entirely subjective, highly personalized, and not consistent with the common habits of mankind in the use of agricultural and woodland areas. Aside from an uncommunicated need to hide his clandestine activity, the occupant exhibits no reasonable expectation of privacy consistent with the common habits of persons engaged in agriculture. The aerial over-flights which revealed petitioner's open marijuana field did not violate Fourth Amendment restrictions.

Pointing to the lack of a search warrant, petitioner charges illegality of the officers' foot expeditions to the marijuana field. The reach of the Fourth Amendment no longer turns upon a physical intrusion into any given enclosure; hence, that a trespass was later revealed is not controlling. (*Katz v. United States*, supra, 389 U.S., at p. 353, 88 S.Ct. 507; *People v. Krivda*, 5 Cal.3d 357, 365, 96 Cal.Rptr. 62, 486 P.2d 1262.) After the aerial survey the officers still had inadequate means to establish the location with the particularity needed for a search warrant. [citations omitted]. Further investigation was necessary to establish the marijuana field's location. In the course of this investigation the deputies made two trips afoot, traversing unfenced, unposted woodland and following dirt paths. The land may have been public or private. On their first expedition

the officers met two men on a branch path who told them they were 'probably' on private property and asked them to leave. About a quarter mile distant from the well worn path, they encountered a homemade game refuge sign containing a telephone number. These were the only evidences of private ownership in the property. Neither of these evidences occurred on the path which ultimately led the officers to the marijuana field. On that path there were no badges of private ownership or of exclusion of travelers. The officers followed that path to a point where the tops of the marijuana plants were visible. Upon viewing contraband from a place where expectations of privacy had not yet been exhibited, the officers had probable cause and hence authority for a warrantless entry and seizure. [citations omitted]. Petitioner's appearance and assertions of privacy did not divest the officers of that authority." 110 Cal.Rptr. 585, at 589–590.

The standard that I would apply is "are such areas expectedly private according to the common habits of mankind in general?" I would not predicate the standard upon the expectations of marijuana farmers, but upon the common habits of mankind in general. I do not think it is determinative whether the marijuana farmer had "no trespassing" signs posted or whether the marijuana field is enclosed. Common sense would dictate to even the most inept law enforcement officer that a marijuana farmer desired and expected privacy even if he had no signs or fences. This same inept officer would know that a farmer raising corn, cotton or hay would not, according to the common habits of mankind, object to his crops being viewed even if he had posted signs or built fences.

Thus, the fencing or posting of signs does "exhibit" an expectation of privacy, but this expectation of privacy in an open field does not meet the requirement of "reasonableness" as does the use of a swimming pool in the yard or a telephone booth. The common habits of mankind expect privacy while in a telephone booth, or using the

backyard swimming pool; but, not in an open field unoccupied by persons.

There is a conflict in the evidence as to whether the appellant even "exhibited" an expectation of privacy. There is a long, unfenced portion of this farm along a public road. The officers testified that there were no "no trespassing" signs posted on this unfenced boundary. The appellant's proof is to the contrary. If the majority opinion is correct, then I think that it is essential that this question be resolved by the Trial Judge before the new rule promulgated by the majority can be applied. If the appellant did not exhibit his expectation of privacy along this road, then the new rule would not be applicable.

As stated by the United States Supreme Court in *Hester*, the open fields doctrine is as old as the common law. The doctrine has not been altered or modified by any court whose decisions are binding upon this court. The doctrine is universally recognized, followed and respected. It is sensible and just. I cannot join with the majority in pioneering a precedent that would abolish this time-honored principle.

I think that the Trial Judge erred in suppressing the evidence obtained without a search warrant. I would grant the relief prayed in the State's Petition for Certiorari and would remand the case to the Trial Court with instructions to admit evidence of this gross violation of the drug laws.