**STATE of Tennessee, Petitioner,**

v.

**Berton Lawrence LAKIN, Respondent.**

Supreme Court of Tennessee.

Oct. 15, 1979.

---

3. *Coley v. Coley,* 48 Tenn.App. 628, 349 S.W.2d 183 (1960).

John C. Zimmermann, Asst. Atty. Gen., Nashville, for petitioner; William M. Leech, Jr., Atty. Gen., Nashville, Alfred C. Schmutzer, Jr., Dist. Atty. Gen., Sevierville, Richard R. Vance, Asst. Dist. Atty. Gen., Knoxville, of counsel.

William E. Phillips, Phillips & Hale, Rogersville, for respondent.

## OPINION

HARBISON, Justice.

In this case the Court of Criminal Appeals held that the trial court should have sustained a defense motion to suppress evidence. Acting without a warrant, sheriffs' officers seized cultivated marijuana after a search of respondent's farm. We granted the State's petition to give further consideration to the issues raised.

The facts as developed at an informal suppression hearing are summarized in the opinion of the Court of Criminal Appeals as follows:

"The farm itself is located in Hancock County, but the tip which led officers to the property was first communicated to the Hawkins County sheriff's department, then relayed to Hancock County officers. The substance of the information was that either a moonshine still or a marijuana patch was on Lakin's property.

"Acting within two hours of receiving the tip, officers from both counties parked on the road and followed a path to a house on the farm. Not knowing whether anyone was in the house, the officers knocked but received no answer. They proceeded to a nearby shed but found no one there. From there, the men followed a forked path, one branch winding roughly one-fourth mile up a hill to a

barn (blocked from view from the house by leaves), adjacent to which was a garden bounded by woods and thicket. From the upper garden, a path led to a marijuana patch 50 to 100 feet away, although the path itself wound around for approximately 150 feet. The plants in this patch, the largest of which were over four feet tall, had not recently been watered, but there was a hose supplied by a dammed creek nearby. A separate water line branched off from the main line to the creek and led down through the garden to the barn. Another path led from this patch to a separate patch, which had been watered recently, where the plants were roughly two to four feet tall."

Upon these facts, the Court of Criminal Appeals held that the search was unreasonable under the Fourth Amendment to the United States Constitution and Article I, section 7 of the state constitution. The Court relied upon its previous decision in *State v. Wert*, 550 S.W.2d 1 (Tenn.Cr.App. 1977), in which this Court denied certiorari for jurisdictional reasons.

The State does not challenge the statement of facts quoted above, most of which were stipulated. It urges this Court to overrule *Wert*, which it insists is not in harmony with federal cases and decisions of the great majority of states on the subject of search and seizure. The State also urges the Court to modify previous decisions in this jurisdiction cited and relied upon by the Court of Criminal Appeals.

In *Wert, supra*, in a divided decision, the majority of the Court of Criminal Appeals concluded that the "open fields" doctrine, stated by the United States Supreme Court in the case of *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), had been significantly modified by later decisions, particularly *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In the course of its opinion the Court cited and relied upon *United States ex rel. Gedko v. Heer*, 406 F.Supp. 609 (W.D.Wis.1975). The dissent-

ing member of the Court of Criminal Appeals disagreed and, citing cases from many of the intermediate federal appellate courts, asserted that the principles announced in *Hester* are still viable.

We note at the outset that the *Gedko* case, *supra*, was subsequently vacated and summarily dismissed on appeal by the United States Court of Appeals for the Seventh Circuit. 588 F.2d 840 (7th Cir. 1978). Undoubtedly the reason for this action was that in the case of *United States ex rel. Saiken v. Bensinger*, 546 F.2d 1292 (7th Cir. 1976), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977), that court reaffirmed the "open fields" doctrine, which was questioned by the District Court's opinion in *Gedko*. *See* discussion in *Sesson v. State*, 563 S.W.2d 799, 803 (Tenn.Cr.App. 1978).

There is no question but that in *Katz v. United States, supra*, the Supreme Court of the United States emphasized the "reasonable expectation of privacy" of an individual rather than the specific location of the premises searched or the nature of the property seized. There are authorities which have expressed the view that *Katz* has modified the holding in *Hester*.[1] The degree and extent of that modification, however, may be more one of factual application than of substantive law. Certainly the Supreme Court of the United States has continued to cite *Hester* and to apply it in recent cases. For example in *Air Pollution Variance Board of Colorado v. Western Alfalfa Corp.*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974), the Court unanimously reversed the Colorado state courts and held that there was no Fourth Amendment violation when a State Health Department inspector entered the premises of a corporation in order to make tests of plumes of smoke emitted from its chimneys. The Supreme Court held that any invasion of privacy, if one could be said to exist, was "abstract and theoretical." 416 U.S. at 865, 94 S.Ct. 2114. The fact that the inspector had entered upon the corporate premises

---

1. *E. g.*, 1 *Wharton's Criminal Procedure* § 150 (12th ed., C.E. Torcia 1974).

without a warrant was held immaterial. The Court said:

"Depending upon the layout of the plant, the inspector may operate within or without the premises but in either case he is well within the 'open fields' exception to the Fourth Amendment approved in *Hester*." *Ibid*.

*Hester* was also referred to in *United States v. Santana*, 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). And in the more recent case of *General Motors Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), the Court upheld the warrantless seizure of automobiles on "public streets, parking lots, or other open places", citing *Hester*. In the same opinion, however, the Court held invalid a warrantless search of private corporate officers, reiterating the "governing principle" that:

"except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." 429 U.S. at 352–53, 97 S.Ct. at 628–629. Quoting *Camara v. Municipal Court*, 387 U.S. 523, 528–29, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

As pointed out in the dissenting opinion in *Wert, supra*, several intermediate federal appellate courts and also many state courts have concluded that the "open fields" doctrine is still viable and that searches and seizures made away from a residence and its immediate environs and outbuildings may be accomplished without a search warrant. The subject was recently reviewed in depth in the case of *People v. Lashmett*, 71 Ill.App. 429, 27 Ill.Dec. 657, 389 N.E.2d 888 (1979). There a tractor, suspected to have been stolen, was observed on the defendant's property by the sheriff from an airplane. Later he went upon the defendant's property and obtained the serial number and other identifying data from the tractor. Verifying that it was indeed stolen, he obtained a warrant and seized the vehicle. Relying upon the "open fields" doctrine and finding that the tractor was situated beyond the residence and its curtilage, the court sustained the search.

Our examination of the federal cases and state decisions on the subject leads us to question the conclusion reached by the majority of the Court of Criminal Appeals in *Wert* that serious inroads have been made upon the "open fields" doctrine by *Katz, supra*. If the disposition of this case depended upon federal law alone, a very close question would be presented. Quite possibly, according to the present weight of authority, the search might be sustained under the Fourth Amendment.

That conclusion, however, is certainly not free from doubt. The conduct of the officers in the present case, as best we can glean from the record, was not very similar to that involved in the *Hester* case. There, police officials went upon the premises of the defendant and concealed themselves at a distance of from fifty to one hundred yards from his residence. They saw him dispense illegal whiskey and recovered containers when he and one of his customers discarded them while fleeing from the officers.

In the present case, it appears that the officers had very little information concerning the defendant, his conduct or the property in question when they undertook to conduct the search. Apparently all the information they had was that there might be "a moonshine still or a marijuana patch" on "the old Jones place." Armed only with this information, four police officers, two from Hawkins County and two from Hancock County, entered upon this farm, parking their cars at a roadway more than a quarter of a mile from the house. Finding no one in the residence, they then proceeded at least another quarter mile into the farm, beyond a barn, and near the barn and a garden discovered the contraband material.

Under no circumstances could this be deemed a mere "abstract and theoretical" intrusion upon the property. Probably the area in which the marijuana was found was outside the "curtilage" of the residence as that term is usually understood, although it was near a barn and garden which were apparently in use by the occupant of the farm.

The application of the "open fields" doctrine or any other aspect of the law of search and seizure depends upon the facts, not upon neat phrases. In the end, under both state and federal constitutions, the issue in each case is whether or not a particular search or seizure was reasonable under all of the facts and circumstances. Words and phrases simply are not substitutes for analytical examination of the conduct of police officials. The constitutionally guaranteed freedom from arbitrary or unreasonable intrusions upon persons and property operates as a limitation upon police authority. On the other hand, police officials, in the enforcement of criminal laws, obviously have a duty to detect criminal activity and obtain evidence to convict criminal offenders. In their decisions, the courts, both state and federal, have attempted to accommodate and strike a fair balance between these sometimes competing interests.

We recognize the difficulty police officers have in enforcing the laws against clandestine illegal activity, as emphasized by the State in its petition for certiorari. We have no desire to make that task more difficult or to impose unnecessary impediments. On the other hand, the obtaining of a warrant does not ordinarily impose insurmountable difficulties, particularly in the absence of an emergency. The courts of this jurisdiction have not been unreasonable in their interpretation of warrants or their execution, where officers have made a conscientious effort to obtain a valid warrant prior to making a search. *See, e. g., Norton v. State*, 207 Tenn. 656, 343 S.W.2d 361 (1960); *Peters v. State*, 187 Tenn. 455, 215 S.W.2d 822 (1948); *Lawson v. State*, 176 Tenn. 457, 143 S.W.2d 716 (1940).

Irrespective of federal cases on search and seizure, this Court has recognized that there are indeed areas of land which in particular circumstances may be beyond the protection of Article I, section 7 of the state constitution. In *Chico v. State*, 217 Tenn. 19, 394 S.W.2d 648 (1965), the Court said:

"The law is settled that when the land on which the evidence is found is not possessed as a part of the curtilage or used in the daily operation of the premises, then the constitutional provision against unreasonable searches and seizures does not apply." 217 Tenn. at 25, 394 S.W.2d at 651.

Insofar as our research reveals, this Court has never used the phrase "open fields", and its decisions applying the state constitution have been somewhat more restrictive than comparable federal cases. The State recognizes this in its brief and requests us to overrule earlier cases which on similar facts have invalidated searches like that involved here.

Some two years after *Hester* was decided by the Supreme Court of the United States, this Court rendered its decision in *Welch v. State*, 154 Tenn. 60, 289 S.W. 510 (1926). There police officers entered a one-acre tract, located some three hundred yards from the residence of the accused. This area was enclosed entirely by a wire fence and was used for confining livestock. From this fence another fence extended beyond and enclosed the barn of the defendant. The trial judge charged the jury that as a matter of law no warrant was required for the sheriff to search this lot. This Court reversed. It construed the state constitution, which secures "persons, houses, papers and possessions," to include occupied, fenced areas used daily in connection with and as a necessary part of farming operations. The Court did state that the word "possessions" would not include "wild or waste lands, or lands that were unoccupied." 154 Tenn. at 63, 289 S.W. at 511.

In *Peters v. State*, 187 Tenn. 455, 457, 215 S.W.2d 822 (1948), the Court stated that the term "possessions" as used in the state constitution "includes more than the 'curtilage.' "

In the later case of *Allison v. State*, 189 Tenn. 67, 222 S.W.2d 366 (1949), a warrantless search was invalidated where:

"The wood-lot where the still and nine gallons of illicit whiskey were found was a half-mile from Defendant's dwelling, but the lot was a fenced enclosure used for pasture." 189 Tenn. at 68, 222 S.W.2d at 366.

On the other hand, in *Chico v. State, supra,* the Court sustained a search which occurred in a "honeysuckle thicket" some thirty or forty yards from the defendant's house and not within the enclosure surrounding the house. The Court noted that there was "no proof in the record that the honeysuckle thicket where the stolen articles were found was used in the daily operations of the defendant's premises." 217 Tenn. at 25, 394 S.W.2d at 651.

Although the decisions in this state may be somewhat more restrictive than those in other states or than federal decisions, no compelling reason has been demonstrated in this case for modifying or overruling them.[2] Ordinarily officers searching occupied, fenced, private property must first obtain consent or a warrant; otherwise they proceed at the risk that evidence obtained may be suppressed. When a warrantless search is challenged, an exception to the search warrant requirement must be shown.

From such proof as is in the record before us, we are unable to conclude that the evidence preponderates against the finding of the Court of Criminal Appeals that the area searched was not "wild and wasteland" which might be "roamed at will without a search warrant."

The judgment of the Court of Criminal Appeals is affirmed at the cost of petitioner.

BROCK, C. J., and HENRY, COOPER and FONES, JJ., concur.

---

2. We are aware that in *Sneed v. State,* 221 Tenn. 6, 13, 423 S.W.2d 857 (1968), the Court stated that the Fourth Amendment and Article I, section 7 of the state constitution were identical in intent and purpose. We do not depart from that statement and agree that ordinarily the two constitutions should be construed alike where possible. Where, however, as in the particular phase of search and seizure law under consideration, there has been a settled development of state constitutional law which does not contravene the federal, we are not inclined to overrule earlier decisions unless they are demonstrably erroneous.