UNITED STATES of America, Plaintiff-Appellee,

v.

Howard Dee HASSELL, Defendant-Appellant.

Nos. 15665, 15666.

United States Court of Appeals Sixth Circuit.

Sept. 21, 1964.

Dale Quillen, Nashville, Tenn., for appellant.

Kenneth Harwell, U. S. Atty., Carroll D. Kilgore, Asst. U. S. Atty., Nashville, Tenn., for appellee.

Before MILLER and EDWARDS, Circuit Judges, and BROOKS, District Judge.

PER CURIAM.

Defendant appeals from convictions and sentences for violation of federal statutes [1] prohibiting unlicensed manufacture and possession of distilled liquor. He was indicted by a federal grand jury in relation to two separate instances of "moonshining" which allegedly occurred about a year apart.

Defendant waived jury trials. Through his own counsel he stipulated that the record made by the government in relation to his previously denied motions to suppress evidence could be taken as the record of the trials. Proceeding on this basis, the federal District Judge found defendant guilty and sentenced him to one year on each of the three counts involved in the first offense (to be served concurrently) and one year on each of the four counts involved in the second offense (to be served concurrently), with the sentences for the second offense to be served consecutively to those for the first offense.

On appeal the only issues pertain to the claims of unconstitutional search and seizure which were made to the trial judge on the motions to suppress evidence and were rejected by him in a careful opinion.

The circumstances of the first search and seizure were those of an "open field" search without a search warrant. The still in question was found in operation in an open field about 250 yards from defendant's house, with underground piping running into his barnyard. Prior to finding of the still federal agents, who testified that they had smelled the mash, visited defendant's premises in his company and "sniffed" around his barnyard, apparently satisfying themselves that the odor did not emanate from there. Still following their noses, they then went into defendant's open field adjacent and found the still. They testified without dispute that they had not seen anything in the barnyard which pointed them toward the still.

As to this episode defendant-appellant claims that the sniffing around the barnyard was an illegal search which infected the balance of the proceeding and that the search of an open field could be legally made under Tennessee law only under a search warrant.

As to the first point, there is in this record no indication of objection made by defendant to the visit to his barnyard, and no indication of any causal relationship between that search and the subsequent finding of the still.

There is case law in Tennessee holding that the Tennessee Constitution, Article I, Section VII, is construed to prohibit an open field search without a search warrant where the field is "in actual possession and occupancy." Welch v. State, 154 Tenn. 60, 65, 289 S.W.2d 510 (1926). The record herein does not disclose that the field in question was "in actual possession and occupancy."

Moreover, we deal here with federal enforcement of federal statutes. Search and seizure procedures for federal officers have been spelled out by federal statute (18 U.S.C. § 3109), federal rules (Rule 41(d), Federal Rules of Criminal Procedure) and federal case law. The Supreme Court has held that federal law can be "neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." Elkins v. United States, 364 U.S. 206, 224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960).

■ Under federal law the search of open fields without a search warrant is not constitutionally "unreasonable." Hester v. United States, 265 U.S. 57, 44 S. Ct. 445, 68 L.Ed. 898 (1926); Raine v. United States, 299 F. 407 (C.A.9, 1924); Koth v. United States, 16 F.2d 59 (C.A.9, 1926).

---

1. The indictment in the first case charged violations of 26 U.S.C.A. § 5601(a) (1); 26 U.S.C.A. § 5601(a) (4); 26 U.S.C.A. § 5604(a) (1). The indictment in the second case charged violations of 26 U.S.C.A. § 5601(a) (1); 26 U.S.C.A. § 5601(a) (4); 26 U.S.C.A. § 5601(a) (7); 26 U.S.C.A. § 5604(a) (1).

In the second indictment involved herein a search warrant was procured after the federal agents received (and by surveillance confirmed) information that defendant was operating a still in his barn. With the search warrant in their possession, the agents went directly to the barn where they heard what they assumed was the still in operation. They entered through an open door. They went up to the loft where they saw the still in operation, but found it unattended. They then left the barn without seizing anything. They went toward the house, meeting the defendant as he came out of it, identified themselves and displayed the warrant. They then returned to the barn with defendant and seized the liquor and destroyed the still.

On cross-examination as to this procedure, one agent testified:

"Q. Wouldn't it be the normal course to drive into the man's property if you had a search warrant in the usual manner up in his driveway into his house?

"A. No, sir, it is not normal. It is not normal procedure unless the distillery is in the house and you can easily drive up to the house.

"Q. What was the purpose, Mr. Hynds, in coming back down the creek and walking into this?

"A. We assumed that the distillery was in operation. It smelled like it was in operation. And from the sounds that I heard, it didn't sound like a tin roof rattling. It sounded like the sounds you actually hear around a distillery when people are working. Metallic sounds. We assumed that it was in operation. We assumed that if we drove up into the house and went to the house and it was in operation they would see us and they would all run out the back there across the creek and get away. We assumed Mr. Hassell was there in the barn with his distillery and that is the reason we went in the back way on foot.

"Q. And when you went in with your warrant you searched his barn?

"A. Yes, sir. We just walked right on up into the loft of the barn and there was the distillery.

"Q. At that time you hadn't served him with a search warrant?

"A. No, sir, we were trying to, though.

"Q. You were trying to?

"A. Yes, sir.

"Q. You hadn't been to the house at this time?

"A. No, sir, we had not.

"Q. You just went into the barn?

"A. Yes, sir.

"Q. At the time then you actually served the warrant on him you had already made the search. Is that right?

"A. Yes, sir."

It appears to us, as it did to the trial judge, that the agents acted on the reasonable surmise that they would find defendant in the barn where they heard the still in operation. No force or breaking was employed to enter the barn and on finding it unoccupied, they went to the house to serve the warrant.

Defendant points out no case law which holds that this procedure represents any constitutional deprivation, or any violation of the federal statute pertaining to search and seizure. Title 18 U.S.C. § 3109 provides:

"§ 3109. *Breaking doors or windows for entry or exit*

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." Title 18 U.S.C. § 3109.

Patently there was no violation of this statute, since this was not a house and there was no forcible entry.

Affirmed.