**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Ray E. OLIVER, a/k/a Edward Ray Oliver, Defendant-Appellee.**

**No. 80–5437.**

United States Court of Appeals, Sixth Circuit.

Argued April 15, 1981.

Decided Aug. 7, 1981.

Alexander Taft, U. S. Atty., Scott Wendelsdorf, Asst. U.S. Atty., Louisville, Ky., for plaintiff-appellant.

Robert L. Wilson, Jamestown, Ky., for defendant-appellee.

Before LIVELY and KEITH, Circuit Judges, and RICE,* District Judge.

KEITH, Circuit Judge.

Appellant Edward Ray Oliver was indicated and charged with manufacturing marijuana in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2. At a pre-trial suppression hearing, the district court sustained a motion by Oliver to exclude evidence obtained from the warrantless search of his property. The evidence the government had sought to admit was marijuana crops which were discovered growing in a field on the property. On this appeal, the United States argues that a warrantless search of open farm land is not a violation of the Fourth Amendment search and seizure provision and, therefore, that the district court's refusal to admit evidence of the marijuana found growing on Oliver's property must be reversed.

The record below establishes that Oliver, a retired farmer, lives with his family on the property in question. He uses the bulk of the acreage to raise hogs and for other domestic purposes. The remaining crop land is leased for commercial farming use. On July 18, 1980, a tip from an informant, who remains unidentified, was received by phone at the Columbia post of the Kentucky State Police. The anonymous caller stated that marijuana was growing on the Oliver farm. Detectives Ben Hadley and Jimmy Antle immediately drove to the farm, entering by a private road which Oliver owned.

The detectives drove past Oliver's residence for approximately three-quarters of a mile to a barn. There they were mistaken for hunters, and advised to leave the premises. The record does not indicate whether the detectives identified themselves as law enforcement officers, but they did fail to heed the warning and did continue across the property. The private road was blocked at the barn by a locked gate. A "No Trespassing" sign was posted on the gate, the fourth such sign that had been seen by Hadley and Antle while crossing the farm. Unable to proceed further by car, the two men slipped through a hole in the gate and continued on foot across the farm for one-quarter mile. They reached a field which had been leased out by Oliver, and found marijuana growing there. After discovering the marijuana crops, the detectives left the farm and were met on a public road by Oliver. The appellee was arrested and then taken back to his farm where he arranged for a tractor to destroy the marijuana. At Hadley's request, Oliver directed the detectives to a second leased area where more marijuana was found and destroyed.

The constitutional issue raised by the search of Oliver's property and the subsequent exclusionary ruling by the district court requires that we determine whether the "open field" doctrine announced in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), applies to the facts of this case. The Supreme Court held in *Hester* that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields." *Id.* at 59, 44 S.Ct. at 446. The practical effect of this holding was to prohibit the warrantless

---

* Hon. Walter H. Rice, U.S. District Judge for the Southern District of Ohio, sitting by designation.

search of a residence and curtilage while permitting such a search of any area outside the curtilage. *United States v. Hassell,* 336 F.2d 684, 685 (6th Cir. 1964), *cert. denied,* 380 U.S. 965, 85 S.Ct. 1111, 14 L.Ed.2d 155 (1965). *See also United States v. Ramapuram,* 632 F.2d 1149 (4th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981); *United States v. Williams,* 581 F.2d 451 (5th Cir.), *cert. denied, William v. United States,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979). The curtilage was defined as the area immediately surrounding the residence, usually that portion of land commonly referred to as the "family yard." *See generally United States v. Hester, supra; United States v. Hassell, supra; The Supreme Court,* 1967 Term, 82 Harv.L.Review, 63, 189 (1968); *Note,* 76 Mich.L.Rev. 1154, 177–79 (1979).

Under the *Hester* test, the evidence obtained during the search of Oliver's field could be viewed as admissible since the field was not within the curtilage of the residence. However, the district court concluded that the *Hester* test, as modified by *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), requires suppression of the evidence. We agree.

The Supreme Court held in *Katz* that the Fourth Amendment prohibition against warrantless searches and seizures protected people not places. 389 U.S. at 351, 88 S.Ct. at 511. The Court stated that the test for determining the legality of a warrantless search was no longer a question of whether the search was conducted in a "constitutionally protected area," *i. e.* the curtilage, rather it was whether the individual whose property was searched had a "reasonable expectation of privacy" in the area searched. *Id.*

Thus, *Katz* shifted the emphasis of the test from an inquiry into common-law property distinctions to an inquiry in which the individual's reasonable expectations of privacy became the focal point. Justice Harlan, concurring in *Katz,* articulated the new criteria more fully by outlining a two-pronged test for determining the reasonableness of the individual's expectation of privacy:

The rule that has emerged from prior decisions is that there is a two-fold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' 389 U.S. at 361, 88 S.Ct. at 516.

▮ Oliver clearly had a subjective expectation of privacy in the field searched. The locked gate, the numerous "No Trespassing" signs and the private road all taken together constitute ample evidence of a subjective expectation of privacy. Since Oliver clearly established the fact that he had a subjective expectation of privacy in the farm land, the only remaining question is whether society recognizes that expectation as a reasonable one. Recent case law has established that a subjective expectation of privacy is reasonable if it: (1) is a privacy expectation normally shared by people in that setting, and (2) it falls within some tolerance level which represents the limits of what society can accept given its interest in law enforcement. *See generally Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Dorsey,* 591 F.2d 922 (D.C.Cir.1978); 82 Harv.L.Rev. 189, 192 (1968).

We agree with the district court that Oliver's expectation of privacy was objectively reasonable. Society's interest in law enforcement is not unduly hampered by requiring a warrant prior to searching a private field which has been reached through a private road exhibiting several "No Trespassing" signs and blocked by a locked gate, unless there is an imminent threat of destruction of the evidence or there exists a high probability that the evidence will cause serious bodily harm. We are presented with no such emergency situation here.

We note that we are not alone in our belief that the "open fields" exception to the warrant requirement can no longer be automatically invoked to validate a war-

rantless search and seizure which takes place outside the curtilage. *United States v. Williams, supra* at 454 (the court stated that a property owner has a reasonable expectation of privacy in an outbuilding encompassed by a fence which might or might not include the residence); *United States v. DeBacker*, 493 F.Supp. 1078, 1081 (W.D.Mich.1980) ("*Katz* compels a more sensitive reading of the Fourth Amendment . . . Instead of declaring entire areas as outside of Fourth Amendment protection, I believe *Katz* compels an analysis of the particular type of surveillance, and its effect on the privacy and security of citizens."); *State v. Lakin*, 588 S.W.2d 544, 549 (Tenn.1979) (It is not unreasonable to require a police officer to obtain a warrant from an impartial magistrate prior to a search of an open field where marijuana is allegedly growing); *State v. Wert*, 550 S.W.2d 1, 3 (Tenn.Crim.1977) (50-acre farm which was enclosed by a fence is protected from a warrantless search); *State v. Brady*, 379 So.2d 1294, 1296 (Fla.App.D4 1980) (there is a reasonable expectation of privacy in a 1,800-acre tract of land which is fenced, locked, occupied, and posted); *Burkholder v. Superior Court*, 158 Cal.Rptr. 86, 91 (1979) (an individual has a subjective expectation of privacy which is objectively reasonable in a partially fenced-in field, separated from other land by a locked gate).

We note that our decision in *United States v. Hassell, supra*, which held that "open fields" were automatically exempted from the warrant requirement, is inconsistent with the Supreme Court's decision in *Katz*. It is therefore no longer the law of this circuit.

Accordingly, the order of the district court, Judge Johnstone, suppressing the evidence obtained from the search of appellee's property is affirmed.