IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 28, 2009 Session

**STATE OF TENNESSEE v. MONTY BLACKWELL**

**Appeal from the Circuit Court for Grainger County**
**No. 4380     Richard Vance, Judge**

_____

**No. E2009-00043-CCA-R3-CD - Filed February 10, 2010**

_____

Following the warrantless search of his residence and adjoining property, the Defendant, Monty Blackwell, was charged by presentment from the Grainger County grand jury with manufacture of marijuana, possession of drug paraphernalia related to the manufacture of marijuana, possession of marijuana with the intent to sell or deliver, theft of property valued at over one thousand dollars, and theft of property valued at over five hundred dollars. The Defendant filed a motion to suppress all evidence seized as a result of the warrantless entry onto his property. Following an evidentiary hearing, the trial court granted the motion and suppressed the evidence. In this appeal as of right, the State contends that the trial court erred in granting the motion to suppress. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P.  3 Appeal as of Right;  Judgment of the Circuit Court**
**is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON P.J., and JAMES CURWOOD WITT, JR., J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; James B. Dunn, Jr., District Attorney General; and Tonya D. Keith, Assistant District Attorney General, attorneys for appellant, State of Tennessee.

M. Jeffrey Whitt, Knoxville, Tennessee, attorney for appellee, Monty Blackwell.

**OPINION**

The record reflects that the Defendant's charges stem from a fly-over drug eradication operation conducted in Grainger County by the Governor's Task Force on Marijuana Eradication (GTFME) on June 14, 2007. Following a March 31, 2008 evidentiary hearing on the Defendant's motion to suppress, the trial court suppressed all evidence. The State filed a notice of appeal on April 10, 2008, averring that the suppression of evidence resulted in the substantive effect of a dismissal of the presentment against the Defendant. The State moved to dismiss the presentment without prejudice. See State v. Meeks, 262 S.W.3d 710, 721-22 (Tenn. 2008) (holding there is no appeal as of right for the State pursuant to Tenn. R. App. P. 3(c)(1) unless the trial court actually dismisses the prosecution).[1] The trial court filed judgments of dismissal relative to each count of the presentment on December 1, 2008. The State filed a second notice of appeal on that same day. We conclude that this case is properly before the court.

Jason Poore, a special agent with the Tennessee Alcoholic Beverage Commission, testified that his duties included the investigation of liquor law violations and the enforcement of marijuana statutes. Through these duties, he was assigned to the GTFME to conduct aerial surveillance for the purpose of "spotting" marijuana patches. He testified that he was trained as a marijuana spotter to "just fly back and forth . . . . looking for things that are out of kilter with normal vegetation."

On June 14, 2007, following the eradication of an unrelated marijuana crop discovered in the area, Special Agent Poore was conducting aerial surveillance when he discovered a bucket that seemed "out of place in a wood line." Special Agent Poore testified that he dispatched the ground officers to the area to confirm the contents of the bucket near the wood line because he and the pilot "could see that there was a small green plant in [the bucket] but from that elevation it's hard for me to say 100 percent for sure that it was marijuana." Special Agent Poore also noticed additional "[i]dentical-styled buckets" on top of vehicles, in truck beds, and in the yard of what investigation would later reveal to be the Defendant's backyard.

Special Agent Poore testified that he notified the ground officers to "come up the fence line and check the bucket because it was located in a field not next to a residence or

---

[1] In this court, the State filed a motion to dismiss voluntarily the appeal initiated by the first notice of appeal, No. E2008-00944-CCA-R3-CD, based upon Meeks. This court granted the State's motion on November 17, 2008. Following the entry of the judgments of dismissal and subsequent notice of appeal on December 1, 2008 which initiated the appeal in this docket number (No. E2009-00043-CCA-R3-CD), we granted the State's motion to place the original record with this case for consideration by the court.

anything." However, he also explained that the trail to the wood line where the bucket was located converged with the Defendant's driveway and that the bucket was "relatively close to the house." Once the ground officers confirmed that the bucket next to the wood line contained marijuana, Special Agent Poore advised the sheriff to contact the homeowner to obtain consent to search the curtilage of the home because the other buckets were located in the backyard and surrounding area of the residence. He also recalled that several hours elapsed between the confirmation of the contents of the first bucket and his first entry onto the Defendant's property. Special Agent Poore recalled seeing "No Trespassing" signs at the entrance to the Defendant's property.

Special Agent Chuck Kimbrell of the Tennessee Bureau of Investigation Drug Investigation Division testified that on June 14, 2007, he was dispatched by Special Agent Poore to the wood line area near the Defendant's residence to confirm the contents in the bucket. After confirming that the wood line bucket contained marijuana, he and the sheriff went to the front door of the residence where they spoke to an individual who was babysitting at the home that day. Upon request of the officers, the babysitter telephoned the Defendant. Special Agent Kimbrell spoke to the Defendant and advised him that marijuana had been found in the curtilage of his home. Special Agent Kimbrell recalled that the Defendant seemed surprised to learn of the marijuana. He asked the Defendant for "consent to search the premises of the property," and the Defendant agreed. The officers proceeded to search the curtilage of the property. Special Agent Kimbrell testified that while they searched, the spotter in the helicopter advised them that there were more buckets of similar appearance in and around the property.

Special Agent Kimbrell testified that after discovering other buckets of marijuana around the Defendant's property, they "waited a little bit" before approaching the Defendant's front door once more to ask the babysitter to telephone the Defendant. During this telephone call, Special Agent Kimbrell advised the Defendant that they had discovered "a lot of marijuana on the property" and that it would be in the Defendant's "best interest" to come to the Grainger County Sheriff's Office. The Defendant agreed. After some time had passed waiting for the Defendant to arrive from Sevierville, the officers telephoned the Defendant again and asked him to meet them at the residence. Once at the residence, the Defendant signed a written consent to search the Defendant's barn, gazebo, areas behind the house, and curtilage. The officers recovered marijuana growing in buckets, bongs, and "various items associated with drug use and drug traffic."

Special Agent Kimbrell testified that they interviewed the Defendant at his residence. He recalled that they did not advise him of his rights because the Defendant was not in custody at the time. He explained that "[w]e were sitting on [the Defendant's] front porch and [the Defendant] was sitting in a rocking chair with myself and Sheriff Harville. We were

talking to him on the front porch." Special Agent Kimbrell testified that the Defendant admitted to growing the marijuana but told them that "he was growing it for his own use and just to see if he could grow marijuana." When confronted with the fact that a four-wheeler found on the property was stolen, the Defendant explained that he had purchased the four-wheeler from another individual and had no knowledge that it was stolen at the time of its purchase.

Relevant to their entry onto the property, Special Agent Kimbrell could not recall whether there was "a lock gate" on the property. On cross-examination, Special Agent Kimbrell stated that upon his initial entry onto the property, he was only accompanied by Sheriff James K. Harville of the Grainger County Sheriff's Office. Special Agent Kimbrell could not recall seeing any posted "No Trespassing" signs on the gate, but he acknowledged that a sign "very well could have been" on the gate. When asked about the effect of a "No Trespassing" sign on the ability of investigators to conduct a "knock and talk," Special Agent Kimbrell testified that he believed that an officer could ignore the signs and go talk to residents at their home if the officer believed that a crime had been committed. When asked why he and Sheriff Harville did not obtain a search warrant before entering the property, Special Agent Kimbrell testified that they wanted to see if the Defendant would cooperate first.

Grainger County Sheriff James K. Harville testified that none of the gates on the Defendant's property were locked when they approached the residence. He further recalled that the gate he and Special Agent Kimbrell entered through was "swung open." Sheriff Harville admitted that they entered the property initially by the Defendant's driveway and followed a path that veered from the driveway to the wood line location where the first bucket of plant material was identified as marijuana. He stated that he believed the driveway was a right-of-way that the Defendant shared with an adjacent residence.

Following the presentation of testimony, the Defendant argued to the trial court that the warrantless entry onto the Defendant's property without the existence of any exigent circumstances coupled with the posted "No Trespassing" signs precluded entry onto the property by anyone without the Defendant's permission. The State argued to the trial court that the officers failed to see the signs and entered the property through an unlocked open gate in order to make initial contact with the Defendant for the purpose of conducting a knock and talk. Alternatively, the State contended that, assuming the officers had seen the signs, their first telephone conversation with the Defendant during which the Defendant consented to the search of the areas surrounding his home rendered the entry onto the property lawful.

The trial court initially noted Agent Poore's testimony that he could not conclusively identify the material located near the wood line as marijuana, stating that

> [t]his case departs from the usual helicopter surveillance situation leading to seizure of marijuana. Normally the helicopter pilot or agent in the helicopter observed marijuana, is able to describe, identify it as marijuana. Here we're talking about seeing a bucket. [Agent Poore] cannot and could not say from that point, his vantage point, that it was or was not marijuana.

The trial court also characterized the officers' entry onto the property to contact the resident as a knock and talk. The trial court stated that this is "a lawful procedure and has been lawful for many years," but "[t]he question [in this case] turns on the use of a No Trespassing sign." The trial court found that the Defendant gave consent when telephoned by the officers and did not raise the issue of the signs at that time, but the trial court noted that "it was too late anyway because the officers were already there." The trial court further found that the officers entered the property through an open gate and that they did not initially see the "No Trespassing" signs. However, based upon the trial court's understanding of the case law, the trial court stated that "the No Trespassing sign is a protection of the property, whether seen or unseen." Therefore, the trial court granted the motion to suppress.

## ANALYSIS

"[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. Furthermore, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. However, this court is not bound by the trial court's conclusions of law. State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). An appellate court's review of the trial court's application of law to the facts is conducted under a de novo standard of review. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001) (citations omitted).

Both the federal and state constitutions offer protection from unreasonable searches and seizures. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." See U.S. Const. amend. IV. Similarly, Article I, § 7 of the Tennessee Constitution provides "[t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and

seizures." See Tenn. Const. art. I, § 7. "[T]he most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)); see also State v. Berrios, 235 S.W.3d 99, 104 (Tenn. 2007). "Exceptions to the warrant requirement include searches incident to arrest, plain view, hot pursuit, exigent circumstances, and others, such as the consent to search." Berrios, 235 S.W.3d at 104 (citing State v. Cox, 171 S.W.3d 174, 179 (Tenn. 2005)). "[A] trial court necessarily indulges the presumption that a warrantless search or seizure is unreasonable, and the burden is on the State to demonstrate that one of the exceptions to the warrant requirement applied at the time of the search or seizure." State v. Bobby Killion, E2008-01350-CCA-R3-CD, 2009 WL 174859, at *14 (Tenn. Crim. App. June 22, 2009).

For the purpose of our analysis, we have identified four distinct intrusions onto the Defendant's property. The first occurred when drug task force investigators conducted aerial surveillance over the Defendant's property. The second intrusion occurred when ground officers entered the Defendant's property to inspect the bucket located near the wood line. The third and fourth intrusions occurred when officers approached the front door of the Defendant's residence in order to obtain his consent to search.

Initially, we note that courts have long held that aerial surveillance is not prohibited by the Fourth Amendment because it is unreasonable to impose any expectation of privacy upon evidence viewed from the air. See California v. Ciraolo, 476 U.S. 207, 213-15 (1986); State v. Prier, 725 S.W2d 667, 671 (Tenn. 1987). Therefore, the aerial surveillance of the Defendant's property has no constitutional impact to our discussion.

We also note that the State argues that the aerial observations gave ground officers probable cause to enter the Defendant's property. However, the trial court's findings regarding Special Agent Poore's testimony do not support this argument. The trial court found that the testimony of Special Agent Poore established that no one observed marijuana from the helicopter because Special Agent Poore testified that he was unable to affirmatively identify the plant material as marijuana. Under these circumstances, we cannot conclude that the proof supports the State's argument.

Furthermore, at the trial court level, neither party took issue with the entry onto the property to examine the bucket near the wood line. Therefore, the trial court did not address this entry in its findings. In the absence of sufficient factual findings, "the appellate court must decide where the preponderance of the evidence lies." Killion, at *13 (citing Fields v. State, 40 S.W.3d 450, 457 n.5 (Tenn. 2001)). We acknowledge that there is no reasonable

expectation of privacy, and thus no Fourth Amendment protection, attached to the open fields of the property. See Oliver v. United States, 466 U.S. 170 (1984). Furthermore, a posted no trespassing sign could not provide constitutional protection where otherwise none would exist in an open field. Id. at 182 n 13.

However, in State v. Jennette, 706 S.W.2d 614, 620-21 (Tenn. 1986) (emphasis added), our supreme court held that "no warrant is necessary to enter upon open farmland *where officers have lawfully observed contraband growing thereon, either from an aerial overflight or from lawful ground observation*." In so holding, the court noted that "Tennessee cases have been somewhat more restrictive in construing Article I, § 7 of the State Constitution than have federal cases construing the Fourth Amendment." Id. at 620. In Jennette, aerial observations confirmed that marijuana was growing in an open field area of the Jennettes' property. The facts in this case are distinguishable from those in Jennette in light of Special Agent Poore's testimony that he was unable to conclusively identify the plant material as contraband from aerial observation – a fact that was noted by the trial court in its findings. Therefore, we conclude that the entry by the officers onto the property to inspect the unidentified plant material near the wood line violated the Defendant's rights under Article I, § 7 of our state constitution. See State v. Lakin, 588 S.W.2d 544 (Tenn. 1979) (entry onto fenced property without any knowledge of whether the property contained contraband was illegal).

Our conclusion that the initial warrantless entry onto the Defendant's property was illegal does not end our inquiry. Now we must determine whether the subsequent warrantless entries prompted by the discovery of marijuana at the first entry were the fruits of this illegal entry. Under the "fruit of the poisonous tree" doctrine, any evidence obtained through the exploitation of an unlawful search must be suppressed. See Wong Sun v. United States, 371 U.S. 471, 488 (1963). However, evidence should not be considered fruit of the illegality "simply because [the evidence] would not have come to light but for the illegal actions of the police." Id. at 487-88. As recently summarized by this court in State v. Linda Greene, No. E2008-00884-CCA-R3-CD, 2009 WL 3011108 (Tenn. Crim. App. Sept. 22, 2009):

> Evidence which has been seized after illegal police conduct is admissible if its seizure is sufficiently attenuated from the earlier illegal police activity. State v. Garcia, 123 S.W.3d 335, 345 (Tenn.2003). "'A consent to search that is preceded by an illegal seizure is not 'fruit of the poisonous tree' if the consent is both: 1) voluntary, and 2) not an exploitation of the prior illegality.'" Id. at 346 (quoting Wayne LaFave, 3 Search and Seizure § 8.2(d) at 656 (3d ed.1996)). Our supreme court has said that the following factors are relevant in making the factual determination whether the taint of an illegal seizure was sufficiently attenuated from a subsequent consent: "1) the temporal proximity

-7-

of the illegal seizure and consent; 2) the presence of intervening circumstances; and 3) the purpose and flagrancy of the official misconduct." Garcia, 123 S.W.3d at 346 (stating the standard of Brown v. Illinois, 422 U.S. 590, 604, 95 S. Ct. 2254, 45 L. Ed.2d 416 (1975)). The State bears the burden of showing attenuation. Garcia, 123 S.W.3d at 346.

Greene, at *8.

In this case, the initial illegal entry allowed the officers to confirm that the bucket near the wood line contained marijuana and, based upon this confirmation, Special Agent Poore concluded that similar buckets in the Defendant's backyard contained marijuana and advised the officers to obtain the Defendant's consent to search the area surrounding the home. The officers made two subsequent warrantless entries onto the property in order to obtain the Defendant's consent to search and to conduct further searches of the area near the home.

Regarding the temporal proximity between the initial illegality and the consent, the officers remained near or on the property for several hours while seeking the absent Defendant's consent to search via telephone on two separate occasions. The entries onto the property occurred contemporaneous with the confirmation of the marijuana in the wood line bucket. Therefore, this factor weighs in favor of suppression.

Regarding the presence of intervening circumstances, during the passage of several hours while the officers made multiple warrantless entries onto the property, the officers did not seek a search warrant. These entries occurred despite the absence of any exigent circumstances to justify the intrusions. The record does not contain any proof that the evidence was at risk of destruction. In fact, the Defendant was not home when the officers obtained his consent on two occasions. When asked why they did not seek a warrant, Special Agent Kimbrell replied that the officers wanted to see if the Defendant would cooperate without a warrant first. This factor also weighs in favor of suppression.

Regarding the purpose or flagrancy of the police misconduct, the officers testified that they never sought a search warrant because they wanted to see if the Defendant would consent. The officers also explained that their entries onto the property were for the purpose of conducting a "knock and talk" in hope of gaining the Defendant's consent to search. While we acknowledge that a "knock and talk" is a lawful and appropriate investigative technique that does not require either probable cause or reasonable suspicion, knock and talks are only lawful and appropriate "[a]bsent express orders from the person in possession against any possible trespass." State v. Cothran, 115 S.W.3d 513, 521 (Tenn. Crim. App. 2003) (citing United States v. Cormier, 220 F.3d 1103, 1109 (9th Cir. 2000), cert. denied 531 U.S. 1174 (2001)). Clearly, the presence of the "No Trespassing" sign evinced an actual

subjective expectation of privacy and a revocation of the "implied invitation" of the front door. Thus, the record reflects that the officers mistook their actions as constitutionally permissible, <u>Greene</u>, at *8, and this factor weighs against suppression.

In consideration of all of the factors, we cannot conclude that the subsequent entries were sufficiently attenuated from the initial illegal search. The subsequent entries were an exploitation of the initial illegality and the Defendant's consent cannot be considered voluntary. Therefore, we conclude that the evidence recovered from these entries are fruits of the illegal search and that the trial court correctly suppressed the evidence in this case.

We note that the State argues that the evidence should be admissible as inevitable discovery. Under the inevitable discovery doctrine, illegally obtained evidence may be admitted when it would have been discovered by lawful means. See <u>State v. Patton</u>, 898 S.W.2d 732, 735 (citing <u>Nix v. Williams</u>, 467 U.S. 431 (1984)). However, our conclusion that the initial entry onto the property to examine the contents of the wood line bucket was illegal precludes application of the inevitable discovery doctrine. From their initial entry through each subsequent entry, the officers were not in a place where they had the right to be. See <u>State v. Hurley</u>, 876 S.W.2d 57, 67 (Tenn. 1993). Thus, without any legal basis to provide probable cause for the subsequent searches, the inevitable discovery doctrine cannot save the evidence from suppression. Accordingly, the judgment of the trial court is affirmed.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE